FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
May 18, 2023
OFFICE OF THE CLERK

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
El Dorado Division

| | |
|---|---|
| In the Matter of the Search of | ) |
| SUBJECT ITEMS seized on February | ) |
| 7, 2023 from Ford Expedition in El Dorado, | )    1:23-cm-10 |
| Arkansas, currently being held at the FBI | ) |
| Office in El Dorado, Arkansas | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: **SUBJECT ITEMS seized on February 7, 2023, from Ford Expedition in El Dorado, Arkansas, currently being held at the FBI Office in El Dorado, Arkansas, more particularly described on "Attachment A".**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See "Attachment B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ■ evidence of a crime;
- ■ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2)(B) | Receipt of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts: **See Affidavit of FBI Special Agent Phillip Garrett**

- ■ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Phillip Garrett, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/18/2023

_____
*Judge's signature*

City and state:  Fayetteville, Arkansas

Christy D. Comstock, United States Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**AN APPLICATION FOR A SEARCH WARRANT**</u>

I, Phillip Garrett, a Special Agent with Federal Bureau of Investigation, being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I have been employed as a Special Agent of the FBI since February 2013. I am currently assigned to the Little Rock Division.   In connection with my official duties, I am charged with investigating violations of federal criminal laws.   I have been involved in all aspects of federal criminal investigations, including, among other things, debriefing defendants, sources, and informants; conducting surveillance and undercover operations; executing search warrants; drafting Title III affidavits and monitoring Title III wiretaps; and analyzing documentary and physical evidence. My duties as a Special Agent with the FBI also include the enforcement of federal criminal statutes involving the sexual exploitation of children pursuant to Title 18, United States Code, Sections 2251 through 2259, the Sexual Exploitation of Children Act (SECA).

2.      This affidavit is being submitted in support of an application for a search warrant for the purpose of searching seized electronic digital devices to include: cellular smart phones with contained external storage cards, and computers with internal storage drives which were seized by Agents with the FBI on February 7, 2023, in El Dorado, Arkansas 71744, pursuant to the execution of a federal arrest warrant issued by the Western District of Arkansas. The following devices ("**SUBJECT ITEMS**") were seized on February 07, 2023, following the

suspect's federal arrest for possession and transportation of child pornography, and subsequent interview, and require digital forensic processing:

> 01 – One (1) Gold Colored Galaxy S7 Cell Phone
>
> 02 – One (1) Dark colored Samsung Cell Phone, S/N: R58T50CR2RL
>
> 03 – One (1) Blue Colored Motorola Cell Phone
>
> 04 – One (1) White Cell Phone, IMEI: 358205501683422
>
> 05 – One (1) Gray Acer Laptop, S/N: NUSH7AA02434406B9F1601
>
> 06  – One (1) Evoo Laptop, Model EV-C-116-1
>
> 07  – One (1) Gray HP Laptop

3.      The facts and statements contained in this affidavit are based in part on: Your Affiant's investigation of this matter; information relayed to your Affiant by the National Center for Missing and Exploited Children (NCMEC); information related to your Affiant, directly or indirectly, by other law enforcement agents; information gathered from the service of subpoenas; the results of physical surveillance conducted by law enforcement agents; and your affiant's experience, training and background as a Special Agent with the FBI.  Because this affidavit is being submitted for the limited purpose of securing authorization for the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2252A(a)(2) [receipt/distribution of child pornography] and Title 18, United States Code, Section 2252A(a)(5) [possession of, or access with intent to view, child pornography] are presently located on **SUBJECT ITEMS**.

## JURISDICTION

4.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A).  Specifically, the Court of the Western District of Arkansas is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## DEFINITIONS

5.      The following definitions apply to this affidavit and attachments:

**a.** "Child pornography" includes any visual depiction of sexually explicit conduct where: (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

**b.** "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e)(1).

**c.** "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit

electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

**d.** "Computer server" or "server," as used herein, is a computer that is attached to a dedicated network and serves many users. A web server, for example, is a computer which hosts the data associated with a website. That web server receives requests from a user and delivers information from the server to the user's computer via the internet. A domain name system ("DNS") server, in essence, is a computer on the internet that routes communications when a user types a domain name, such as www.cnn.com, into his or her web browser. Essentially, the domain name must be translated into an Internet Protocol ("IP") address so the computer hosting the web site may be located, and the DNS server provides this function.

**e.** "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. It

commonly includes programs to run operating systems, applications, and utilities.

**f.** The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

**g.** "Internet protocol address" or "IP address" refers to a unique number used by a computer to access the internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the internet. Whether dynamic or static, an IP address is assigned to only one user for each period of its assignment.

**h.** "Internet service providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the internet. ISPs provide a range of functions for their customers including access to the internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the internet including telephone based dial-up, broadband based access via digital subscriber line ("DSL") or cable television, dedicated circuits, or satellite based

subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name - a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a modem, the subscriber can establish communication with an Internet Service Provider ("ISP") over a telephone line, through a cable system or via satellite, and can access the internet by using his or her account name and personal password.

**i.** "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

**j.** "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor, *see* 18 U.S.C. § 2256(8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2)(A).

**k.** "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image, and data which is capable of conversion

into a visual image that has been transmitted by any means, whether or not stored in a permanent format. *See* 18 U.S.C. § 2256(5).

**l.** The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multimedia Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device or computer, including any computer server, computer hardware, or computer software).

## STATUTORY AUTHORITY

6. As noted above, this investigation concerns alleged violations of the following:

**a.** Title 18, United States Code, Sections 2252(a)(2) and (b)(1) prohibit any person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any visual depiction using any means or facility of interstate or foreign commerce, or that has been mailed or shipped or

7

transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce or through the mails, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

**b.** Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2) prohibit any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

## **PROBABLE CAUSE**

7. On or about March 20, 2020, SA Garrett obtained a copy of National Center for Missing and Exploited Children (NCMEC) CyberTipline Report No. 64055989, filed by Google Inc on or about February 4, 2020, regarding Google Gmail user

"jonathancook2964@gmail.com."  SA Garrett reviewed a copy of this CyberTipline Report and observed the following:

a. NCMEC received CyberTipline No. 64055989 from Google Inc. on or about February 5, 2020. The CyberTip classified the submitted images as apparent child pornography.

b. The Google account information for the individual utilizing jonathancook2964@gmail.com:

> Phone: XXX-XXX-1130 (Verified 01-31-2019 02:57:23 UTC)
>
> Email Address: jonathancook2964@gmail.com (Verified)
>
> Email Address: ericacook61686@gmail.com
>
> Google provided IP Logs for the above user from 5-09-2019 – 2-02-2020
>
> Google also provided the date of birth for the account user.

c. CyberTipline Report No. 64055989 contained 128 files (images). SA Garrett reviewed the files and determined they met the statutory definition of child pornography.

d. CyberTipline Report No. 64055989 identified two previous CyberTipline Reports related to the Gmail user jonathancook2964@gmail.com.

8.    An Administrative Subpoena was issued to AT&T for subscriber information related to the two most recent Internet Protocol (IP) addresses utilized by the user of jonathancook2964@gmail.com. However, AT&T advised they did not maintain records in the normal course of business that associate individual accounts or devices with wireless dynamic IP addresses. Pursuant to an Administrative Subpoena issued by the FBI, AT&T provided the following subscriber information for telephone number XXX-XXX-1130:

MSISDN: XXX-XXX-1130

MSISDN Active:  04/04/2018

Name: Marsha Cook

Service Start Date: 04/04/2018

Contact Name; Marsha Cook

Contact Home Phone: XXX-XXX-5600

Contact Home Email: Pinkpreacher@gmail.com.

A specific address in El Dorado Arkansas.

9.     The name Jonathan Cook, with the same date of birth as the Google account user, returned the following Arkansas Driver's License information:

Jonathan Lee Cook

Issued: 02-12-08 (Expired)

DUI OF DRUGS Suspended 06/25/2014

The same address as was provided for Marsha Cook

10.     On July 14, 2020, a federal search warrant was issued to Google for information associated with Gmail use jonathancook2964@gmail.com.   On August 31, 2020, Google provided records in response to the federal search warrant. Your Affiant conducted a review of the records received from Google related to Gmail user jonathancook2963@gmail.com and observe approximately 130 files containing child pornography. During the review of these records your Affiant observed a jpg image file of what appeared to be a pre-pubescent female believed to be between the ages of 6-8 years of age. This file contained approximately 12 thumbnail images which appeared to be screenshots taken during an online web streaming video utilizing "Video Thumbnail Maker + Viewer." The thumbnail images contain a timestamp

located in the upper right-hand corner, with the first image displaying a time of 00:04:16, and the last image displaying a timestamp of 00:27:44. In one of the thumbnails contained in the file, the pre-pubescent child is observed laying on what appears to be a pillow/bed, and wearing a pink colored tank top/nightgown, which is pulled up around her waist. The child was not wearing panties and was observed touching her vaginal area with the fingers of both hands. A separate thumbnail contained within the file depicted the child laying down and using both hands to spread open the vagina, thus exposing the vulvar area and vaginal opening. Another thumbnail contained within the file captures the child using a finger(s) to penetrate the vagina.

11.     Your Affiant also observed a separate jpg image file which depicted what appeared to be pre-pubescent female believed to be between the ages of 6-8 years of age, wearing nothing but a blue shirt with pink writing, and panties. The file contained approximately 13 thumbnail images, which appeared to be screenshots taken during an online web streaming video utilizing "Video Thumbnail maker + viewer." The thumbnail images contain a timestamp located in the upper right-hand corner, with the first image displaying a time of 00:00:24, and the last image displaying a timestamp of 00:5:13.  One of the thumbnail images within the file depicts the pre-pubescent child pulling her panties to the side exposing the child's vagina. Another thumbnail image depicts a close up of the child's vulvar area and vaginal opening.

**SUBJECT INTERVIEW**

12.     During the course of the investigation, Agents made numerous attempts to locate Jonathan Cook (hereinafter COOK), who at the time had no permanent residence.  On June 01, 2022, Agents located and interviewed COOK regarding the possession of child pornography. Prior to the recorded interview, COOK was advised of his Miranda rights, and waived those rights by signing the FBI FD-395 advice of rights form. During the interview COOK confirmed

that he was the user of Gmail account jonathancook2963@gmail.com and that he had both downloaded and possessed child pornography.

**ARREST**

13.     Pursuant to a federal arrest warrant issued in the Western District of Arkansas (AR), file number 1:23-CR-10001, On February 7, 2023, Agents and Task Force Officers (TFOs) with the FBI located and arrested COOK while driving a Ford Expedition as he pulled into the driveway located at 915 Maplewood Drive, El Dorado, AR. During the arrest, Agents/TFOs observed numerous electronic devices in plain sight located inside the Ford Expedition COOK was driving. Subsequent to the arrest, COOK was transported to the Union County Detention Center. In addition, the Ford Explorer COOK was driving was towed to the El Dorado Police Department (EPD).

**SUBJECT INTERIEW – 2**

14.     On February 08, 2023, COOK was interviewed at the Union County Sheriff's Office (UCSO). Prior to the recorded interview, COOK was advised of his Miranda rights, and waived those rights by signing the FBI FD-395 advice of rights form. During the interview, COOK informed Agents that he had accessed and viewed child pornography on his cell phone since his last interview with Agents on June 01, 2022.  In addition, COOK stated that he was the owner of the Ford Expedition and that he had purchased it approximately 2 years ago. COOK also advised he had essentially been living out of his Ford Expedition. When asked if the electronic devices in his vehicle contained child pornography, COOK said the small HP H360 Pavilion likely did. COOK later commented that he could not recall which devices in his vehicle contained child pornography, but said his phone and computer likely did, and stated "*When you shoot up a gram of fucking methamphetamine you don't know what the fuck you're looking at.*"

12

At the conclusion of the interview COOK advised there was another computer located in his vehicle that possibly contained child pornography as well. COOK gave verbal consent for agents to search his vehicle and provided Agents with the password to unlock the devices. After the interview, agents conducted an inventory of COOK's Ford Expedition and seized the **SUBJECT ITEMS**. Per the request of COOK, his vehicle was returned to his mother.

15.     Based on the interview with COOK on February 08, 2023 in which he informed agents it was likely some of the devices in his Ford Expedition contained child pornography,  it is believed  the **SUBJECT ITEMS** seized from his vehicle contain child sexual abuse material (CSAM). Your Affiant also believes the seized **SUBJECT ITEMS** could contain further evidence related to possession and distribution of child pornography. Your Affiant is requesting to search the **SUBJECT ITEMS** listed above in paragraph 2, as well as described in attachment A.

## TECHNICAL BACKGROUND

16.     Based on my training, knowledge and experience, your Affiant is aware that individuals who commit online sexual exploitation offenses involving minors will often collect and/or view child pornography on their computer, and digital media storage devices, for several reasons:

**a.** They may receive sexual gratification and satisfaction, and/or fantasize about sexual contact with minors by viewing minors engaged in sexual activity or sexually suggestive poses;

**b.** They may collect sexually explicit or suggestive materials in a variety of media for their own sexual arousal and gratification;

**c.** They almost always possess and maintain their material in the privacy and security

of their home or some other secure location. Child pornography distributors/collectors typically retain recordings, mailing lists, child erotica and store their child pornography amongst other, otherwise legal media or files. Digital evidence, like child pornography contraband, is different than traditional evidence that can be concealed, sold, used and/or destroyed and is not as volatile as other illegal items like narcotics; and

**d.** Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by to enable the owner to view the collection, which is valued highly.

**e.** They also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

**f.** They generally prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

**g.** Increasingly, individuals who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes, use mobile computing devices to do so. These portable devices can connect to the Internet at an individual 's residence, or also through routers and wireless routers in various public and private

14

locations. Mobile computing devices and electronic storage media such as laptops, tablets, smart phones, and flash drives, often travel with the person utilizing them and are commonly found in residences during search warrants.

17.     Your Affiant knows computers serve four basic functions in connection with child pornography: production, communication, distribution and storage. Photographs and other digital images must be stored as data on a computer or other digital media device using specialized software to transfer images from a digital camera to a computer, or other electronic storage device, or by transferring images saved onto a media card to a computer or electronic storage device.

18. Your Affiant knows that if a child pornography viewer chooses to upgrade their electronic storage device, it is a simple process to transfer images from one device to another device. After the photograph or other image has been transferred onto the computer, the computer stores the data from the image as an individual "file." Such a file is generally known as a "GIF" (Graphic Interchange Format) or "JPEG" (for the Joint Photographic Experts Group, which wrote the standard file, recognizable by the ".gif" or ".jpg" file extensions (hereinafter referred to as an "image file.)) Computers are capable of rendering the digital image on a computer screen, transferring the image to another computer, and/or printing the image.

19.     Your Affiant knows that computer hardware, other digital devices, software, and electronic files are important to a criminal investigation in two distinct ways: the objects themselves may be contraband, evidence, instrumentalities, or fruits of a crime; and/or the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data.

20.     The computer's capability to store images in digital form makes it an ideal repository for child pornography. The size of electronic storage media (commonly referred to as a "hard drive") used on the home computers has grown tremendously within the last several years. Hard drives with the capacity of 160 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

21.     Your Affiant knows from training and experience that computer systems commonly consist of computer processing units (CPU' s) hard disks, hard disk drives, display screens, keyboards, printers, modems (used to communicate with other computers), electronic cables, USB flash drives, and other forms of magnetic and optical media containing computer information.

22.     Your Affiant knows from training and experience that computers and magnetic and optical media are used to store information. In addition to the above-mentioned image files, that information often includes data files or other persons engaged in similar activities with minors, and lists of other exploited minors, as well as records of correspondence and conversations (printed or electronic) with such persons.

23.     In addition to being evidence of a crime, there is probable cause to believe that the computers and their storage devices, the monitor, keyboard, printer, modem and other system

components were used as a means of committing offenses involving the sexual exploitation of minors in violation of law. Accordingly, permission is sought herein to search computers and related devices consistent with the scope of the requested search.

24.    In addition to offenders who collect and store child pornography, law enforcement has encountered offenders who obtain child pornography from the Internet, view the contents and subsequently delete the contraband, often after engaging in self-gratification. In light of technological advancements, increasing Internet speeds and worldwide availability of child sexual exploitative material, this phenomenon offers the offender a sense of decreasing risk of being identified and/or apprehended with quantities of contraband. This type of consumer is commonly referred to as a 'seek and delete' offender, knowing that the same or different contraband satisfying their interests remain easily discoverable and accessible online for future viewing and self-gratification. Your Affiant knows that, regardless of whether a person discards or collects child pornography he/she accesses for purposes of viewing and sexual gratification, evidence of such activity is likely to be found on computers and related digital devices, including storage media, used by the person. This evidence may include the files themselves, logs of accounts, access events, contact lists of others engaged in trafficking of child pornography, backup files, and other electronic artifacts that may be forensically recoverable.

25.    Based on my training and experience, and that of computer forensic agents that your Affiant works and collaborates with on a daily basis, your Affiant knows that every type and kind of information, data, record, sound or image can exist and be present as electronically stored information on any of a variety of computers, computer systems, digital devices, and other electronic storage media. Your Affiant also knows that electronic evidence can be moved easily

from one digital device to another. As a result, your Affiant believes that electronic evidence may be stored on any of the digital devices seized.

26.    Based on your Affiant's training and experience, and your Affiant's consultation with computer forensic agents who are familiar with searches of computers, you Affiant knows that in some cases the items set forth in Attachment B may take the form of files, documents, and other data that is user-generated and found on a digital device. In other cases, these items may take the form of other types of data - including in some cases data generated automatically by the devices themselves.

27.    Based on your Affiant's training and experience, and your Affiant's consultation with computer forensic agents who are familiar with searches of computers, I believe there is probable cause to believe that the items set forth in Attachment B will be stored in those digital devices for a number of reasons, including but not limited to the following:

**a.** Once created, electronically stored information (ESI) can be stored for years in very little space and at little or no cost. A great deal of ESI is created, and stored, moreover, even without a conscious act on the part of the device operator. For example, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache," without the knowledge of the device user. The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes affirmative steps to delete them. This ESI may include relevant and significant evidence regarding criminal activities, but also, and just as importantly, may include evidence of the identity of the device user, and when and how the device was used. Most often, some affirmative action is necessary to delete

18

ESL And even when such action has been deliberately taken, ESI can often be recovered, months or even years later, using forensic tools.

**b.** Wholly apart from data created directly ( or indirectly) by user-generated files, digital devices - in particular, a computer's internal hard drive - contain electronic evidence of how a digital device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating systems or application operations, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible for a user to use such specialized software to delete this type of information - and, the use of such special software may itself result in ESI that is relevant to the criminal investigation. In particular, to properly retrieve and analyze electronically stored (computer) data, and to ensure accuracy and completeness of such data and to prevent loss of the data either from accidental or programmed destruction, it is necessary to conduct a forensic examination of the computers. To effect such accuracy and completeness, it may also be necessary to analyze not only data storage devices, but also peripheral devices which may be interdependent, the software to operate them, and related instruction manuals containing directions concerning operation of the computer and software.

28.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

**d.** The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

**e.** Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

39.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

30.     Based on the foregoing information, probable cause exists to believe there is

located on, the **SUBJECT ITEMS,** evidence of violations of Title 18, United States Code,

Section 2252(a)(2) [receipt/distribution of child pornography] and Title 18, United States Code,

Section 2252(a)(4)(B) [possession of child pornography/access with intent to view].

Phillip Garrett
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 18th day of May, 2023

HONORABLE CHRISTY D. COMSTOCK
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

On February 7, 2023, the following electronic device **(SUBJECT ITEMS)** utilized by

JONATHAN COOK were seized from COOK's Ford Expedition in El Dorado, Arkansas. The

**SUBJECT ITEMS** are currently being held at the FBI Office located in El Dorado,

Arkansas:

      01 – One (1) Gold Colored Galaxy S7 Cell Phone

      02 – One (1) Dark colored Samsung Cell Phone, S/N: R58T50CR2RL

      03 – One (1) Blue Colored Motorola Cell Phone

      04 – One (1) White Cell Phone, IMEI: 358205501683422

      05 – One (1) Gray Acer Laptop, S/N: NUSH7AA02434406B9F1601

      06 – One (1) Evoo Laptop, Model EV-C-116-1

      07 – One (1) Gray HP Laptop

**ATTACHMENT B**

**Particular Items to be searched for and Seized**

a.  Any and all images of suspected child pornography and files containing images of suspected child pornography, any and all images believed to be an attempt to produce child pornography, in any form wherever it may be stored or found including, but not limited to:

I. originals, thumbnails, and copies of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

II. videos (AKA motion pictures, films, film negatives), and other recordings or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

III. Images self-produced of the defendant and minors, and attempts to take or produce such.

IV. Images of children, nude or otherwise, possessed, sent, received, or via message, email, or otherwise stored on the phone.

V. Internet history, including CACHE memory related to internet searches for child pornography or websites that could pertain such.

b.  Information or correspondence pertaining the sexual exploitation of children or the trade of sexual explicit images of minors, including but not limited to:

I. correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, text messages, establishing possession, identity of individuals, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

II. records bearing on the production, reproduction, receipt, shipment, orders, requests,

trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

III. Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

IV. Any and all chat log, text messages, email, or any type of communication in any form that is related to the sexual exploitation of minors for sexual purposes or related to the production, distribution or possession of child pornography.

c.  records evidencing ownership of the subject item, including in and all lists of names, telephone numbers, addresses and contacts, and the content of voice mails and text messages and internet-based applications, and internet or purchase history revealing the user of the device.

d.  Any and all security devices, to include encryption devices, needed to gain access to the phone;

e.  Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

f.  Any and all recordings, including those made by the defendant, minors, or others that depicts the defendant, or others engaging in sexually explicit conduct of any type or that depicts the defendant or others that aid in showing the ownership/use of the devices at issue.

g.     In searching the data, the computer personnel may examine and copy all of the data contained in the subject item to view their precise contents and determine whether the data falls within the items to be seized. In addition, the examining personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized.